| | |
|---|---|
| SIMONE E. PHOENIX, | : |
|     *Plaintiff* | : |
| v. | :   C.A. No. 20-cv- |
| DAY ONE, THE PROVIDENCE CENTER, INC., | : |
| JANE DOES 1-2, TIMOTHY McGANN, | : |
| alias, PHILIP HARTNETT, alias, EDMOND | : |
| ESTEN, alias, BRIAN DYER, alias, DWIGHT | : |
| EDDY, alias, SEAN COMELLA, alias, JAMES | : |
| CRYAN, alias, and JEFF RICHARDS, alias, each | : |
| individually and in his official capacity as a | : |
| Providence Police officer, and CITY OF | : |
| PROVIDENCE, by and through its Treasurer, | : |
| James J. Lombardi III, | : |
|     *Defendants* | : |

## COMPLAINT

### Introductory Statement

1. Through this civil action, Plaintiff seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages for acts and/or omissions of Defendants in violation of Plaintiff's rights to freedom from malicious prosecution under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, and for torts under the common law of the State of Rhode Island.

2. This action stems from the prosecution that Defendants initiated when Plaintiff Simone E. Phoenix ("Plaintiff Phoenix" or "Ms. Phoenix")[1], after surviving a felony assault by her then

---

[1] At the time of the events described herein Plaintiff was legally named Simone Watts. When she was divorced in August, 2019 she returned to the use of her maiden name.

ex-husband, went to the Providence Police Station on January 23, 2017, seeking help that was offered to her by individuals who, upon information and belief, were employed by Defendants Day One and The Providence Center, Inc., both private non-profit corporations acting in tandem with Defendant City of Providence's Police Department.

3. Instead of helping Ms. Phoenix access appropriate victim services, Defendants Jane Doe 1 and Jane Doe 2 ("Doe 1," "Doe 2," respectively; together "Jane Doe Defendants") interrogated Ms. Phoenix about her personal and mental health history.

4. Ms. Phoenix answered the Defendants' questions candidly; however she declined Defendants' unsolicited and poorly informed advice to seek a "mental health vacation," explaining that she had work and family commitments.

5. After Ms. Phoenix left the meeting, Doe 1 and/or Doe 2 immediately summoned police, whose presence swelled to include Defendants Timothy McGann, Philip Hartnett, Edmond Esten, Brian Dyer, Dwight Eddy, Sean Comella, James Cryan, and Jeff Richards (together "Defendant police officers").

6. Defendant police officers physically assaulted Ms. Phoenix, despite her repeated verbal notification to this pack of aggressive men that she suffered from PTSD and was a survivor of recent domestic violence, and that they should not touch her. Defendant officers handcuffed Ms. Phoenix so violently that when they finally decided to remove the handcuffs, after leaving her hands pinned behind her back for three (3) hours, Defendant police officers had to call the Fire Department to cut them off of Ms. Phoenix's wrists.

7. Defendant police officers, as a direct and proximate and foreseeable consequence of the

actions of Jane Doe Defendants, initiated the prosecution Ms. Phoenix in Rhode Island District Court for four misdemeanor offenses without probable cause. This prosecution lasted until March 30, 2017, when the City of Providence dismissed the charges against Ms. Phoenix.

## II     Parties

8. Plaintiff Simone E. Phoenix (legally named Simone Watts at the time of the events described herein), was at all times relevant to this Complaint a resident of Providence, Rhode Island.

9. Defendant Jane Doe 1, whose first name upon information and belief is "Debra" or "Deborah," was at all times relevant to this Complaint a "Law Enforcement Advocate" employed by Defendant Day One and assigned to the Providence Police Department.

10. Defendant Jane Doe 2 was upon information and belief employed by Defendant The Providence Center, Inc., and at all times relevant to this complaint, was assigned to the Providence Police Department.

11. Defendant Day One is a non-profit corporation organized under the laws of the State of Rhode Island. At all times relevant to this Complaint, Day One functioned as a state actor, conducting activites including training police and medical professionals, and coordinating the response of first responders to domestic violence."[2]

12. Defendant The Providence Center, Inc. ("Providence Center") is a non-profit corporation organized under the laws of the State of Rhode Island. At all times relevant to this Complaint, Providence Center was under contract with Defendant City of Providence to provide mental health services through and on behalf of Defendant City's Police Department.

---

2    RI Dept. of Public Safety, Grant Administration Office, 2017 Annual Report, at 34.

13. Defendant Timothy McGann ("Defendant McGann") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

14. Defendant Philip Hartnett ("Defendant Hartnett") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

15. Defendant Edmond Esten ("Defendant Esten") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

16. Defendant Brian Dyer ("Defendant Dyer") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

17. Defendant Dwight Eddy ("Defendant Eddy") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

18. Defendant Sean Comella ("Defendant Comella") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

19. Defendant James Cryan ("Defendant Cryan") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

20. Defendant Jeff Richards ("Defendant Richards") is sued individually and in his official capacity as a police officer with the Providence Police Department and at all relevant times was acting under color of state law and within the scope of his employment.

21. Defendant City of Providence ("Defendant City" or "City") is a municipal corporation duly authorized and organized under the laws of the state of Rhode Island and is sued through its treasurer, James J. Lombardi, III, the official designated by R.I.G.L. §45-15-5 to be named in a suit for relief against the City.

### III. Jurisdiction

22. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

### IV. Venue

23. Venue is proper in this Court since, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391. Venue is also proper because a substantial part of the events and omissions giving rise to these claims occurred in the District of Rhode Island.

### V. Material Facts

24. On January 15, 2017 Simone Phoenix was beaten by her husband for the last time. After the assault her husband was arrested by Providence Police and charged with domestic violence vandalism.

25. Ms. Phoenix was hopeful that she and her six-year old son could live independently of her abusive husband, in part because she had recently begun a new position as Manager at a McDonald's restaurant in Seekonk, Massachusetts, working second shift.

26. However, Ms. Phoenix knew that she had to find a place to live on her own with her son in order to begin a new life without her abusive husband.

27. When a Law Enforcement Advocate (LEA) called her on January 23, 2017, Ms. Phoenix was relieved to learn that there were funds available for emergency housing.

28. The LEA offered to mail Ms. Phoenix the application for housing assistance; however to speed the process along, Ms. Phoenix volunteered to pick up the application from the LEA at the Providence Police headquarters at 325 Washington Street in Providence.

29. When Ms. Phoenix arrived at the police station, she was told to report to the Special Victims Unit office on the third floor. There she was greeted by the Law Enforcement Advocate Jane Doe 1, who identified herself as "Deborah."

30. Jane Doe 1 told Ms. Phoenix that in order to qualify for the assistance, Ms. Phoenix would have to answer some simple questions about how she was feeling.

31. Jane Doe 1 started questioning Ms. Phoenix, asking questions of an increasingly personal nature, including questions about Ms. Phoenix's mental health status history.

32. Jane Doe 1 asked if Ms. Phoenix wanted to hurt herself, and Ms. Phoenix answered that no, she did not wish to hurt herself.

33. In response to another question from Jane Doe 1, Ms. Phoenix shared that approximately three years previously, she did have suicidal ideation, and that she had long since overcome that difficult period in her life. Ms. Phoenix also explained that at the present time she felt sad, but had no desire at all to hurt herself.

34. At no point did Jane Doe Defendants address privacy policies, consent to treatment, or even explain the parameters of this impromptu screening, much less review or provide Ms. Phoenix with any forms or documentation.

35. During the interview, Doe 1 advised that she wanted another individual to speak with Ms. Phoenix, and Ms. Phoenix agreed.

36. Defendant Jane Doe 2, upon information and belief a clinician employed by Providence Center, entered the Special Victims Unit office and spent five minutes or less asking Ms. Phoenix some of the same questions that Doe 1 had asked her. After this perfunctory assessment, Doe 2 said that Ms. Phoenix should take "a mental health vacation."

37. Ms. Phoenix replied words to the effect that she would be happy to take any type of vacation but that her new job and responsibilities caring for her son foreclosed that possibility at that time.

38. Doe 2 repeated her unsolicited advice to take a "mental health vacation," and Ms. Phoenix again responded that she was not able to drop work and parenting obligations to enjoy a vacation at that time, regardless of whether she would like one.

39. Doe 2 left the room and closed the door behind her.

40. Determining that the meeting had run its course and aware that the time was rapidly approaching that her son was to arrive home from school, Ms. Phoenix asked Doe 1 if she was free to leave. Defendant Jane Doe 1 replied affirmatively, that yes, Ms. Phoenix could leave.

41. Ms. Phoenix excused herself and explained that she had to meet her son at home. She confirmed that the door was not locked, and left the Special Victims Unit office.

42. Ms. Phoenix walked down the hall and entered the elevator, which was occupied by two Defendant officers.

43. Doe 2 and a man, upon information and belief Defendant Hartnett, approached Ms. Phoenix from behind. The man said to Ms. Phoenix that she could not go in the elevator with the two Defendant officers, because the were going to floor G, or B.

44. Since the elevator is capable of stopping on multiple floors and has capacity for more than two people, Ms. Phoenix explained that their destination was not a problem, because she could simply push the button for the first floor.

45. Defendant Harnett responded with words to the effect of, "No, they think you need to stay," apparently referring to some pronouncement by one or both Jane Doe Defendants.

46. Upon information and belief, Doe 1 and/or Doe 2 instructed Providence Police to simply hold Ms. Phoenix against her will, despite the high probability their actions would lead to an arrest and prosecution, because the Jane Doe Defendants were unwilling to work with Ms. Phoenix to develop an appropriate plan for support services.

47. Instead of engaging in any conversation regarding the directive that Jane Doe Defendants gave them, or any other topic, the Defendant officers, in the presence of Defendant Jane Doe Defendants surrounded Ms. Phoenix, and quickly converged on her in a threatening and menacing manner.

48. There was absolutely no reason to suspect Ms. Phoenix of having committed or being about to commit any crime.

49. There was no reason whatsoever to believe that Ms. Phoenix presented any danger to herself or others.

50. As Defendant officers reached out to grab Ms. Phoenix, she immediately called out in a loud and clear voice that she suffered from PTSD, and informed Defendants that because of her condition, they should not touch her.

51. As Ms. Phoenix informed Defendants, unwanted touching, particularly by men, was almost certain to trigger her PTSD. In addition, as several Defendants were already aware, Ms. Phoenix had only recently survived a violent assault by her husband.

52. Ms. Phoenix repeated several times while she was still on the elevator, in a voice loud and clear enough for all individual Defendants to hear, that she was at the police station because she was a victim of domestic violence, and not to touch her.

53. Nonetheless, Defendant officers grabbed Ms. Phoenix to pull her off the elevator.

54. As Ms. Phoenix had predicted and tried to explain to Defendants, the reactive symptoms of her PTSD manifested and she responded to the assault by this pack of aggressive, threatening men by swinging her arm to protect herself.

55. None of the defendants made any attempt to deescalate their level of violence in response to to Ms. Phoenix's clear notice of her PTSD, or her notice or their own knowledge of her recent experience as a victim of domestic assault.

56. Instead of acknowledging and responding appropriately to Ms. Phoenix's PTSD or recent experience with domestic violence, Defendant officers, in the presence of both Jane Doe Defendants tackled Ms. Phoenix to the ground, and kicked her in the head, back, and stomach.

57. While Defendant officers were kicking and assaulting Ms. Phoenix, Jane Doe 2 merely stood by and held Ms. Phoenix's jacket, but did nothing to intervene.

58. During the assault, someone announced that an ambulance had arrived (apparently requested by one of the Jane Doe Defendants). Defendant Esten responded, "Fuck that! She's arrested. She's going to jail!" No other Defendant challenged Defendant Esten's proclamation.

59. Defendant officers handcuffed Ms. Phoenix so violently that her clothing was forced into the handcuffs and torn.

60. One Defendant officer stated to Ms. Phoenix, "You need to act like a lady," or words to that effect, while filming her using a cell phone, in violation of departmental policy.

61. Defendant officers dragged Ms. Phoenix *by her hair* down a carpeted hallway.

62. Defendant officers placed Ms. Phoenix in a holding cell, where they left her with no access to a phone – even though she pleaded with them to be able to use a phone to ask her her mother to meet her son when he came home from school.

63. For three hours, Defendant officers left Ms. Phoenix in a cell, with her hands cuffed behind her back, and no water, much less mental health care to address the trauma they had caused.

64. When they finally decided to remove the handcuffs from Ms. Phoenix three hours later, police had to call the Fire Department to cut the handcuffs off, because they had jammed her clothing into the cuff.

65. Defendant police officers had Ms. Phoenix transported to Rhode Island Hospital, where she was kept in custody after officers told hospital personnel that she was suicidal.

66. Eventually Ms. Phoenix was able to use her cell phone to contact a friend, who arrived at the facility and demanded that Ms. Phoenix receive treatment.

67. At Rhode Island Hospital, Ms. Phoenix was treated for acute pain in her lower back, neck, and shoulders, and significant bruising on her arms and legs.

68. Before transporting her to the hospital, the Providence Police gave Ms. Phoenix a summons to appear in Rhode Island District Court to answer to three (3) counts of Simple Assault (R.I. Gen. Law §11-5-3) and one count of Malicious Damage to Property (R.I. Gen. Law §11-44-1). Together, these charges implicated a potential sentence of four (4) years in jail and fines of up to $4,000.

69. As a condition of bail, Ms. Phoenix was forbidden from leaving the state without permission of the court; even to go to work in Seekonk, Massachusetts, she was required to file a motion seeking permission from the court.

70. Ms. Phoenix was required to appear in Rhode Island District Court, Sixth Division on seven (7) separate occasions

71. During the period of prosecution, each court appearance and every related conversation with family, employer, and counsel caused Ms. Phoenix to endure vivid and disturbing recollections of the trauma she suffered during the interrogation, assault, and false arrest by Defendants.

72. Finally, on March 30, 2017 Defendant City of Providence dismissed all charges against Ms. Phoenix.

73. Although the charges against Ms. Phoenix had been dismissed, at least three companies declined to hire or retain her for positions for which she was qualified because of the prosecution that Defendants initiated.

74. Immediately after she was charged, Ms. Phoenix told her supervisor at the McDonald's Restaurant about the incident and resulting arrest. Although she had been scheduled full time until Defendants charged her with criminal offenses, Ms. Phoenix's schedule dwindled to two days each week, and then to no days.

75. In July, 2018, Securitas USA, a human resources firm, was prepared to offer Ms. Phoenix a position at Citizens Bank. After Ms. Phoenix provided her fingerprints for the requisite criminal background check, Securitas never contacted her again.

76. In July, 2019, Arbor Staffing offered Ms. Phoenix a position contingent on the results of a criminal background check. Again she was denied the position based on the charges Defendants had caused to be filed against her. Even with the assistance of counsel, Ms. Phoenix was not able to resolve the situation and move forward with the job offer until September, 2019.

77. As a direct and proximate result of the Defendants' acts and/or omissions, including but not limited to those described herein, Plaintiff has suffered and will continue to suffer mental anguish, personal injury, pain and suffering, injury to reputation, impairment of her right to be free from malicious prosecution, deprivation of her civil rights, expenses for legal services, and other great damage.

## VII. Claims For Relief

78. Plaintiff sent a notice of claim to the City of Providence more than forty (40) days before this action and received no response.

79. Plaintiff hereby incorporates into each count below the allegations contained in all preceding paragraphs as if fully set forth herein.

### COUNT ONE
*Malicious Prosecution in Violation of the Fourth, Fifth and Fourteenth Amendments, Actionable Through 42 U.S.C. § 1983 Against All Defendants*

80. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, have maliciously caused criminal charges to be brought against Plaintiff Phoenix, without probable cause and with malice, causing Plaintiff to suffer harm as aforesaid.

### COUNT TWO
*Common Law Malicious Prosecution Against All Defendants*

81. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Phoenix, without probable cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

### COUNT THREE
*Common Law Abuse of Process Against All Defendants*

82. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, used the

legal process of arrest and prosecution in a manner in which it was not intended, namely to coerce Plaintiff into accepting the demands made by Jane Doe Defendants.

### Prayers for Relief

WHEREFORE, Plaintiff hereby prays that this Court grant the following relief:

1. A declaratory judgment that that the Defendants maliciously prosecuted Plaintiff in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the common law of the State of Rhode Island.
2. An award of compensatory damages;
3. An award of punitive damages as permitted by law;
4. An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988;
5. Such other and further relief as this Court deems just and proper.

### VIII.    Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

### IX.    Designation of Trial Counsel

Plaintiff hereby designates Shannah Kurland, Esquire, as trial counsel.

Plaintiff, **SIMONE E. PHOENIX**
By her attorney,

**Date:  March 28, 2020**

/s/ Shannah Kurland _____
**Shannah Kurland, Esq**. (#9186)
149 Lenox Avenue
Providence, RI 02907
Phone:  (401) 439-0518
skurland.esq@gmail.com