IN THE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SIMONE E. PHOENIX,<br>         Plaintiff<br><br>     v.<br><br>DAY ONE, et al | No. 1:20-cv-00152-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

   Plaintiff Simone E. Phoenix, a victim of domestic violence, went to the Providence Police Station on January 23, 2017, having been promised assistance with obtaining housing for herself and her eleven-year-old son. What she found, from members of the Providence Police Department ("PPD") and two victim advocates operating out of the station, was, she alleges, an entirely different response. Instead of the welcome assistance, she claims she was assaulted by a half-dozen or so officers, wrestled to the ground, and kept handcuffed behind her back in a cell for several hours. Unfortunately for the plaintiff, the Court today is unable to do anything but grant summary judgment in favor of all those defendants who have moved for it.

1

A. Background and Procedural Posture

The defendants are seven Providence police officers and the City of Providence (together the "municipal defendants"), Day One,[1] Deb Westgate-Silva ("Ms. Westgate-Silva"),[2] Family Service of Rhode Island ("FSRI"),[3] and Carla Cuellar ("Ms. Cuellar").[4]  The factual circumstances are detailed in a previous Report and Recommendation of Magistrate Patricia Sullivan (ECF No. 28) and are not recounted here except as necessary to explain the reasoning below.

In brief, the plaintiff maintains that she was required to be interviewed by two victim advocates – Ms. Westgate-Silva and Ms. Cuellar – and during the interview told them she had experienced suicidal ideations some three years previously. According to her, she denied having current thoughts of suicide.  After several minutes, Ms. Phoenix called a halt to the interview and wanted to leave the station. The advocates, however, one of whom contends that Ms. Phoenix did admit to recent suicidal thoughts, apparently had relayed their concerns to the police.  Thus, while Ms. Westgate-Silva told the plaintiff she was free to leave, the evidence could support an inference that Ms. Cuellar told the police that the plaintiff needed immediate treatment and directed them to "stop her, stop her" from leaving.  Two officers then grabbed Ms. Phoenix' arms and prevented her from entering the elevator in her

---

[1] Day One is a Rhode Island corporation that gives assistance to victims of domestic assault.  (ECF No. 30, ¶ 11.)
[2] Ms. Westgate-Silva was at the time of the events an employee of Day One.  (ECF No. 30 ¶ 9.)
[3] FSRI is a Rhode Island corporation which, the plaintiff alleged, is under contract to provide services to domestic violence victims.  (ECF No. 30 ¶ 12).
[4] Ms. Cuellar was at the time of the events an employee of FSRI.  (ECF No. 30 ¶ 10.)

attempt to leave the building. Encountering forcible resistance from her, the phalanx of police grew to five or six. She punched at least three of them, causing one of them to fall against a fire alarm and break the glass inside. They ultimately wrestled her to the floor, handcuffed her behind her back, and placed her in a cell where she was kept for at least three hours. (ECF No. 30 ¶¶ 2-6.) She was then charged with three counts of misdemeanor assault and one count of malicious damage to property. After several court appearances, the four misdemeanors were dismissed on March 30, 2020. (ECF No. 30 ¶ 7.)

The municipal defendants, Day One and Ms. Westgate-Silva have all moved for summary judgment, making several arguments.[5] (ECF Nos. 44, 51.) While Federal Rule of Civil Procedure 56(b) allows such a motion to be made at any time, the plaintiff objects and, alternative to denying the motions, prays the Court to defer ruling until after factual discovery closes several months from now. (ECF Nos. 50, 55.) The defendants respond that the Court has before it immutable evidence favoring summary judgment and that no amount of future discovery will present a different factual landscape.

As explained below, the Court agrees with three of the defendants' bases for summary judgment. The plaintiff has made it clear she does not dispute any of the

---

[5] Neither FSRI nor Ms. Cuellar moved for summary judgment. They did, however, move to dismiss and the motion was granted in favor of FSRI. As a result of that Order and this one, Ms. Cuellar remains the only defendant in the action. While the reasoning of this Order would support the granting of a motion for summary judgment had she brought one, a court's power to grant summary judgment *sua sponte* must be exercised with "great circumspection". *Stella v. Town of Tewksbury*, 4 F.3d 53, 55 (1st Cir. 1993).

3

facts upon which those arguments rest. The plaintiff's positions are included in the analysis that follows. For these reasons, the Court DENIES the Motions to Defer (ECF Nos. 50, 55) and GRANTS the motions of the municipal defendants, Day One and Ms. Westgate-Silva for summary judgment on all counts. (ECF Nos. 44, 51).

## B. Standard of Review

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted when the pleadings, discovery on file admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 49. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the non-moving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between

those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.*, 777 F. Supp. 167, 169 (D.R.I. 1991) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, § 2725, at 104 (1983)).

## C. Analysis

### 1. Abuse of Process

In granting the Motion to Dismiss filed by FSRI, the Court has already determined that the count of abuse of process is barred by the three-year statute of limitations, having accrued at the time the misdemeanor charges were lodged against Ms. Phoenix. For the reasons expressed in that Memorandum and Order, the Court GRANTS the motions for summary judgment brought by the municipal defendants, Day One and Ms. Westgate-Silva on this same basis as to Count III.[6]

---

[6] There is an alternate, and equally persuasive, basis for summary judgment. Abuse of process requires a showing that the process that was commenced was "perverted" to a purpose for which it was not intended. *Fiorenzano v. Lima*, 982 A.2d 585, 590 (R.I. 2009). There is neither proof submitted nor even an allegation that the criminal proceedings were set in motion, or that the charges were prosecuted, with any motive other than their evident purpose to punish the plaintiff for allegedly criminal conduct. Because the Court has already set forth at some length its reasoning on the statute of limitations basis, there is no need to occupy its time with a detailed analysis of this point. Suffice it to say that the defendants are entitled to summary judgment with respect to count III.

2. Malicious Prosecution

While Count I of the Second Amended Complaint states a claim for constitutional malicious prosecution and Count II alleges common law malicious prosecution, both causes of action share certain elements and, therefore, both fail and require the Court to GRANT summary judgment in favor of the defendants.[7]

a. Favorable Termination of Prosecution

The two causes of action share four elements: (i) that the defendant caused (ii) a criminal prosecution of the plaintiff (iii) without probable cause and with malice (iv) that terminated in a way favorable to the plaintiff. *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101-02 (1st Cir. 2013) (constitutional claim); *Dyson v. City of Pawtucket*, 670 A.2d 233, 239 (R.I. 1996); *Clyne v. Doyle*, 740 A.2d 781, 782 (R.I. 1999) (common law claims). Favorable to the plaintiff means a disposition that at least "implie[s] innocence." *Jordan v. Town of Waldoboro*, 943 F.3d 532, 545 (1st Cir. 2019) (dismissal because witness died did not imply innocence). This is true not only of the common law tort, but also of the constitutional malicious prosecution cause of action. *Jones v. City of Boston*, 135 Fed. Appx. 439, 440 (1st Cir. 2005).

---

[7] There are other, more complicated issues that the Court need not reach. Whether Day One and Ms. Westgate-Silva acted "under color of state law" is one of them. *See Szekeres v. Schaeffer,* 304 F. Supp. 2d 296, 298-99 (D. Conn. 2004) (finding a private, non-profit victim advocate to be not acting under color of state law when giving the police information that caused them to seize guns). *Szekeres,* though, relied on a factual record that was far more developed than this one about the circumstances and contract under which the advocate operated. Another issue is whether the police acted under a "community caretaking" function when restraining Ms. Phoenix. Interesting as that developing law may be, *see, e.g., Caniglia v. Strom*, ___ U.S. ___, 141 S. Ct. 1596 (2021), a foray in that direction is wholly unnecessary.

All four charges were dismissed at the plaintiff's fifth appearance in Rhode Island's district court. That is agreed. To the extent there is a dispute, it is over the *meaning* of the dismissal and whether it constituted a favorable termination. The defendants rely on two historic documents, whose authenticity and accuracy the plaintiff does not dispute. First, the dismissal form recites that "[the State] dismisses … for the following reasons: Δ has completed counseling." (ECF 44, Exh. 2.) While there may be some ambiguity about the causal connection between the counseling and the dismissal, any ambiguity is resolved by the colloquy between court and prosecutor:

> PROS: The City wants to submit into the record Your Honor uh a dismissal Your Honor pursuant to Rule 48A as the defendant has received the *required* mental health counseling."

(ECF No. 44, Exh. B) (emphasis added).

The only reasonable inference is that a deal was struck between the plaintiff and prosecution that rested on a *quid pro quo* of dismissal in return for counseling. Such a compromise is not a favorable termination. *Jones*, 135 Fed. Appx. at 440. That there is no other reasonable inference – and therefore no genuine issue of disputed fact precluding summary judgment – is borne out by the plaintiff's explanation. She contends that she acquiesced in order to avoid anticipated numerous further court appearances. She explains that even though she was already receiving counseling at the inception of the prosecution, she could have refused the dismissal or could, as she did, "[have] chose[n] to reduce the harm defendants had caused and save herself the emotional stress." (ECF No. 44 at 11-12, ECF 50-1 at

12.) Regardless of the predicament Ms. Phoenix found herself in, and regardless of whether she faced a Hobson's choice of poor options, the choice she made was nonetheless a disposition that did not imply innocence and was therefore not favorable.

There is no other reasonable way to interpret the proceedings, and for that reason, the defendants are entitled to summary judgment on Counts I and II.

### b. Probable Cause

An essential element of both constitutional and common law malicious prosecution is the lack of probable cause to institute criminal proceedings.

### (i) Vandalism

The defendants maintain that there was probable cause to support a claim of vandalism when Ms. Phoenix struck an officer, "knocking him into the fire alarm box directly behind him on the wall" and causing the glass to break. (ECF No. 44 at 6.) Ms. Phoenix does not dispute the factual allegations. It is correct, as the defendants maintain, that vandalism is not a crime of specific intent. *State v. Champa*, 494 A.2d 102, 105 (R.I. 1985). However, it does require willfulness, and willfulness means, under Rhode Island law, "[v]oluntary and intentional." *Berman v. Sitrin*, 991 A.2d 1038, 1052 (R.I. 2010). That might be the end of the matter, and require the Court to conclude that, on the undisputed facts there was no probable cause of vandalism. However, *State v. Soler*, 140 A.3d 755, 764 (R.I. 2016), a case with similar facts, established that accident is a matter of affirmative defense (while defendant was swinging his bat, ostensibly in self-defense, he happened to break several car

windows). As an affirmative defense, it placed the burden of proof squarely on the plaintiff and makes accident versus willfulness a matter of competing inferences.

A more pragmatic conclusion, however, trumps this consideration. In order to prevail on her malicious prosecution claims, the plaintiff is required to show there was no probable cause of *any* criminal act justifying the prosecution. As explained below, there was, as a matter of law based on undisputed facts, sufficient probable cause to justify the arrest for multiple assaults. Whether there was a genuine issue of material fact about vandalism, therefore, is of no legal consequence here.

### (ii) Assaults

Ms. Phoenix does not contest that she struck three officers.[8] She maintains, however, that she was defending herself. The defendants are correct that in Rhode Island one may not resist an arrest even if it is an unlawful arrest. *State v. Ramsdell*, 285 A.2d 399, 404 (R.I. 1971). One can, however, defend oneself if the police are using excessive force. *Id.* Normally, the existence of a genuine issue of disputed fact such as whether the force used was excessive might defeat a motion for summary

---

[8] The municipal defendants' Statement of Undisputed Facts ("SUF") describes Ms. Phoenix striking Det. Esten in the face, then striking Det. Dyer in the face, then striking Det. Dyer a second time in the face causing him to fall into the fire alarm. (ECF No. 44-2 ¶ 7.) Ms. Phoenix did not respond to the SUF and because she has failed to expressly deny the allegations, they are deemed admitted. R.I. Local Rule 56(a)(3). Ms. Phoenix does stress that she did not hit anyone until after she was grabbed and restrained, but nonetheless, she acknowledges that she "attempted to protect herself by delivering a closed-hand strike." (ECF No. 54 at 2.) While Ms. Phoenix urges the Court not to rule on summary judgment until she is able to conduct more discovery, her desire for a fuller factual picture revolves around the events *preceding* the physical struggle, the events following it, and the relationship between the municipality and the private providers. Who if anyone she struck is already within Ms. Phoenix' knowledge and could have been denied if it were in contention.

judgment. But the question here is not "was the plaintiff guilty of assault," it is simply, "was there probable cause to support a charge of assault?" And excessive force is a matter of affirmative defense. Nothing cited by the plaintiff supports the proposition that a police officer, when faced with clear probable cause of an offense must consider whether there is countervailing evidence of an affirmative defense that might cause acquittal at trial.

### D. Conclusion

For the reasons expressed, the Court GRANTS the motions of the municipal defendants, the City of Providence, Day One, and Deb Westgate-Silva, for summary judgment with respect to all counts (ECF Nos. 44, 51), and DENIES the motions of the plaintiff to deny or defer ruling on summary judgment. (ECF No. 50, 55).

IT IS SO ORDERED:

_/s/ Mary S. McElroy_
_____
Mary S. McElroy,
United States District Judge

September 15, 2021