UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


SIMONE E. PHOENIX,                                  :
                        *Plaintiff*                 :
v.                                                  :            C.A. No. 20-cv-152-MSM-PAS
DAY ONE, et al.,                                    :
                        *Defendants*                :


PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO
DEFENDANT CARLA CUELLAR'S MOTION FOR SUMMARY JUDGMENT


I.  INTRODUCTION

Defendant Carla Cuellar's Motion for Summary Judgment attempts to gloss over material

factual disputes by presenting an account that is inaccurate and misconstrues some of its sources.

These inferences packaged as undisputed facts form the basis of defendants' argument that misapplies

the law and suggests that Plaintiff does not have a claim for malicious prosecution under federal or

state law.  The fact pattern surrounding this defendant, disputed and undisputed facts included, makes

Carla Cuellar categorically different from her (former) codefendants.  Defendant Cuellar set in motion

the causal chain that led to Simone Phoenix being dragged out of the elevator, surrounded and

menaced by a group of aggressive men with no idea why, triggering her PTSD and forcing her to

defend herself with the only means available to her – her hands.  *See* Defendant's Statement of

Undisputed Facts ("Def's SUF") at ¶ 15; Def't. Mot. Summ. J., Exhibit 1, Video Surveillance, Doc. 44-

1 at 0:49.   When Defendant Cuellar decided to send two officers to stop Ms. Phoenix from leaving

the police station, her action was the proximate cause of the resulting beat down of Ms. Phoenix by

police, and the subsequent arrest and prosecution of Ms. Phoenix by the City of Providence. *See* Def's

SUF at ¶ 14, Exhibit A, Interrog. Resp Def. Westgate-Silva no.5

Defendant's argument applying law of the case doctrine fails procedurally, because law of the

case does not apply to interlocutory decisions, and with no judgment entered, the summary judgment

orders remain interlocutory. *See, e.g., Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994). But

neither does law of the case apply factually, because Defendant Cuellar's role in the tragedy is

uniquely pivotal to the events that followed.

This defendant is at the center of the controversy not only for what she did, but for what she

said and didn't say.  Just as a police officer on the front end of a criminal charge may still be liable for

malicious prosecution if they provided false information to the prosecutor, Defendant Cuellar holds

the key to revealing how Ms. Phoenix's visit to the Providence Public Safety Complex transformed

her from a domestic violence victim into a criminal defendant.  *See Limone v. U.S.*, 579 F.3d 79, 89 (1st

Cir. 2009)

And *this* central question – what exactly did Carla Cuellar communicate to police officers,

after she made Ms. Phoenix so uncomfortable, she tried to leave before even finishing her application

for assistance? What *exactly* did the defendant tell police officers about Ms. Phoenix *before* Defendant

Cuellar stood by, holding the door and watching as officers provoked the terrified Ms. Phoenix into a

flight or fight response that led to criminal prosecution? And why did Defendant Cuellar's

communication – whether a simple hand gesture, comments, or something more – have such an

impact on the officers' course of action that they blindly acted on the assumption that Ms. Phoenix

must be held against her will, even to the point of restraining her with force?

## II.  STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Grubb v. KMS Patriots, L.P.,* 88 F.3d 1, 3 (1st Cir. 1996); *see also, Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991); Fed.R.Civ.P. 56(c). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251-52. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Id.* at 250 n. 4. If the record, viewed in this light, could not lead a rational trier of fact to find for the party opposing the motion, summary judgment is proper. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

## III. ARGUMENT

### a.    Law of the Case Does Not Apply to Interlocutory Orders, Including Summary Judgment When Judgment Has Not Been Entered into the Docket.

Defendant Cuellar's attempt to apply law of the case doctrine because it fails as a matter of law.  While her recitation of the doctrine is correct as far as it goes, Defendant misapplies it to the

3

instant motion.  No final judgment has entered in the case after summary judgment was granted to other defendants.  *See*  F.R.Civ.P. 58.  *See* Exhibit A., Civil Docket, February 17, 2022.

Thus, the law of the case doctrine does not apply to the summary judgment decision in this case because "[i]nterlocutory orders… remain open to trial court reconsideration, and do not constitute the law of the case." *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) (citing *Union Mut. Life Ins. Co. v. Chrysler Corp.,* 793 F.2d 1, 15 (1st Cir. 1986) (citing 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404[4.1], at 124 n. 4 ("[U]ntil entry of judgment, [interlocutory orders] remain subject to change at any time. *The doctrine of law of the case does not limit the power of the court in this respect.*)" (emphasis added) (2d ed. 1993)); *Commerce Oil Refining Corp. v. Miner,* 303 F.2d 125, 128 (1st Cir. 1962)).  The doctrine must cede to the inherent powers of the Court. *Id.* (citing *United States v. Rivera-Martinez,* 931 F.2d 148, 150-51 (1st Cir.), cert. denied, 502 U.S. 862 (1991)). ("[A]lthough the law of the case doctrine implements an important judicial policy against reconsidering settled matters, it 'is neither an absolute bar to reconsideration nor a limitation on a federal court's power.'"); *see also Vigeant v. U.S.*, 462 F. Supp. 2d 221, 230 n.13 (D.R.I. 2006).

Summary judgment, although granted here as to the motions of other defendants, remains interlocutory until final judgment is entered. "As an interlocutory order, the order granting summary judgment was subject to the district court's discretionary power to alter it at any time prior to the entry of the final decree. The district court … could reconsider the motion for summary judgment as to all issues and parties." *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 875 (1st Cir. 1990) (citing e.g. *John Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 86 (1922); *Jusino v. Zayas*, 875 F.2d 986, 989 (1st Cir. 1989); *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858, 862 (5th Cir. 1970)).  Until final judgment

is entered the ruling remains subject to change "under the inherent powers of a district court to modify an interlocutory order" and therefore, is not subject to the law of the case doctrine.  *Id.*

    **b.**    **Defendant Cuellar Initiated the Process of Legal Action When She Sent Police to Detain Ms. Phoenix, and Cuellar Was the Proximate Cause of Plaintiff's Injuries.**

In describing what it means "to have instituted criminal proceedings against another," the First Circuit has instructed that "[t]he paradigmatic example exists when a person formally swears out a criminal complaint against another person." *Limone v. U.S.*, 579 F.3d 79, 89 (1st Cir. 2009) (citing *White v. Apsley Rubber Co.*, 80 N.E. 500, 501 (1907)).

> In broad brush, an individual may be said to have instituted criminal proceedings against another if he caused those proceedings to be initiated. *See Witham v. Gregory Read Co.*, 243 Mass. 595 (1923); *Mason v. Jacot*, 127 N.E. 131, 133 (1920); *Tangney v. Sullivan*, 39 N.E. 799, 799-800 (1895). The paradigmatic example exists when a person formally swears out a criminal complaint against another person. *See, e.g., White v. Apsley Rubber Co.*, 194 Mass. 97.  **But malicious prosecution is by no means restricted to this paradigm.**   If an individual induces another person (say, a police officer or prosecutor) to lodge formal criminal charges, he may be held to have instituted the criminal proceedings. *See, e.g., Jones v. Schein*, 103 N.E. 57-58 (1913); *Tangney*, 39 N.E. at 800. So, too, if an individual either exercises a peculiar degree of control over the charging official or adamantly presses that official to bring a criminal complaint, he may be held responsible for the institution of the prosecution. *See, e.g., Seelig v. Harvard Coop. Soc'y*, 246 N.E. 2d 642, 646 (1969).

*Limone v. U.S.*, 579 F.3d 79, 89 (1st Cir. 2009) (emphasis added).

In the terminology of tort law, Defendant Carla Cuellar's attempt to summon police to restrain or detain Ms. Phoenix, in the form of "a hand gesture to two nearby police officers" SUF ¶ 14 was the proximate cause of Plaintiff's injury.  Upon Defendant Cuellar's action, "[t]he police officers began walking in the direction the Plaintiff was headed." *Id.*

> An injury or death is proximately caused by an act, or a failure to act, whenever it appears that the act or omission played a substantial part in bringing about or causing the injury or death, and that the injury or death was either a direct result of or a reasonably probable consequence of the act or omission. … [M]any factors and things or the conduct of two or more persons

may operate at the same time, either independently or together, to cause injury or death.  In such a case, each may be considered as a proximate cause of the result.

*Gerardi v. Conlin et al.* 09-cv-288-M, D.R.I., Jury Instructions at 15-16.[1] It is disingenuous for Defendant Cuellar to claim that she "had no involvement in the criminal case against Plaintiff."  Ms. Cuellar's decision to signal two officers to detain Ms. Phoenix was was the cause and the catalyst for the heavy and violent police involvement after Ms. Phoenix police to pursue Ms. Phoenix.

The Defendant's conclusion that she "had no involvement in the criminal case against Plaintiff is simplified to the extent that it misses the point.  Def't. Mot. Summ. J., Doc. 61-1 at 9.  The initial contact between police and Ms. Phoenix, that led to the horrific gang assault on her that followed, was directly caused by Defendant Cuellar.  The police assault led directly to the subsequent arrest and prosecution of Ms. Phoenix. There was no intervening event that broke the chain of causality; only a progression from bad, to worse, to even worse – all of it utterly foreseeable, or at least should have been to Defendant Cuellar who had been working out of the Providence police department for over a decade before her encounter with Ms. Phoenix.

Defendant Cuellar communicated to two police officers that she wanted them to detain or otherwise intervene with Ms. Phoenix.  Pl. Supp. St. Undisputed Facts (SSUF) at ¶ 14.  When the police responded to Defendant's request, they herded her off the elevator, escalated the level of tension exponentially, surrounded her, and finally grabbed her, provoking an attempt at self-defense. Any actions by the officers does not change the fact that Defendant Cuellar called on them to act, and her actions were the proximate cause of the attack that led to the prosecution of Plaintiff.

Defendants in *Bivens* actions may be liable for consequences caused by reasonably foreseeable intervening forces; here, the chain of causation need not be considered broken

---

[1]
https://www.rid.uscourts.gov/sites/rid/files/juryinstructions/civil/09288M%20Gerardi%20v.%20Conlin%20et%20al.pdf,  Last viewed 2.17.22.

if Templeton deceived the subsequent decision maker, *see Townes*, [176 F.3d at 147](), or could "reasonably foresee that his misconduct [would] contribute to an `independent' decision that results in a deprivation of liberty," *Zahrey*, [221 F.3d at 352](). When the facts are viewed in the light most favorable to Higazy, we cannot conclude as a matter of law that there are sufficient superseding causes to cut off Templeton's liability.

*Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007).  It may be challenging to see Defendant Cuellar as the person who set the prosecution of Ms. Phoenix in motion, when the police responded with such violence and escalation.  The First Circuit explained how to approach the question:

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do, that causes the deprivation of which complaint is made. [Citation omitted.] Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989) (quoting *Springer v. Seaman,* 821 F.2d 871, 879 (1st Cir. 1987) (quoting *Soto v. City of Sacramento,* 567 F. Supp. 662, 673 (E.D.Cal. 1983) (citations omitted) and *Johnson v. Duffy,* 588 F. 2d 740, 743-44 (9th Cir. 1978)).

> We have recently addressed the concept of superseding causes. In *Marshall v. Perez Arzuaga,* 828 F.2d 845, 848 (1st Cir. 1987), *cert. denied,* 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988), we stated that an actor is responsible for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties. *See Widow of Andino,* 93 P.R.R. at 178 (defining "intervening cause" as a cause of an injury that "comes into active operation in producing the result after the actor's negligent act or omission has occurred"). A negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have "directly" caused the harm. *Id.* An "unforeseen and abnormal" intervention, on the other hand, "breaks the chain of causality," thus shielding the defendant from liability. *Id.*

*Id.* at 561 (citing *Springer,* 821 F.2d at 876-77 *See Springer,* (similarly describing intervening causes in tort law).  Two defendants in *Gutierrez* argued that they were not the proximate cause of the

plaintiff's injuries because the bullet that injured him came from another person's gun.   However,

the First Circuit looked beyond the mere "smoking gun."

> We have no difficulty concluding that there was a firm evidentiary basis for finding that the actions of Soto and Gotay caused plaintiff's injuries. Soto was the man in charge. He directed and participated in the acts that led to the shooting. The jury could also have found that Gotay was a participant in those acts. Gotay exited the car with his gun drawn and moved toward the Gutierrez' vehicle along with the other officers. Under such a factual scenario, the actions of all four of the officers who participated in the intervention could be deemed to be proximate causes of plaintiff's injuries. *Cf. Melear v. Spears,*862 F.2d 1177, 1186 (5th Cir. 1989) (police officer liable under § 1983 where he guarded a door during the commission of an illegal search by other officers).

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989).

The first assignment of liability to Defendant Cuellar however can be made before any

question of proximate cause arises -when she initiated the seizure of Plaintiff Phoenix by using hand

gestures to communicate with police.   The United States Supreme Court held that a "seizure" has

occurred when there has been either application of physical force or submission to authority, and that

police pursuit alone does not constitute a seizure)." *Petro v. Town of West Warwick ex Rel. Moore*,

770 F. Supp. 2d 475, 478-79 (D.R.I. 2011) (citing *California v. Hodari D.,* 499 U.S. 621, 626 (1991).

This analysis of superseding causes and the chain of causality comes up often when looking at

the apportionment of accountability between police and prosecutors, and it raises the question of

dishonesty:

> A law enforcement officer who presents all relevant probable cause evidence to a prosecutor, a magistrate, or other intermediary is insulated from a malicious prosecution claim where such intermediary makes an independent decision to pursue prosecution or issue a warrant, thereby breaking the causal chain between the officer's conduct and the prosecution **unless the officer concealed or misrepresented facts or brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne.***See Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D.W.Va. 1995) (collecting cases), *aff'd*, 91 F. 3d 132 (4th Cir. 1996); *see also Taylor v. Meacham*, 82 F,3d 1556, 1564 (10th Cir. 1996); *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)

*Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009) (emphasis added).  Police, like the people who work with them day in and day out, eliminate superseding cause when the provide false information or hide true information.  Defendant Cuellar communicated to police that Ms. Phoenix needed to be detained.  Cuellar made such a monumental determination after one brief conversation with Ms. Phoenix.  After their encounter, Ms. Phoenix's mental health was suddenly a huge topic on the third floor of the public safety complex and the persistent untruth began to spread, that Ms. Phoenix had current, not just past, suicidal ideation.

### c.  Health Care Sought Independently of a Prosecution Should Not Constitute Probable Cause.

Defendants have argued vigorously, and this Court has accepted in a previous ruling, that Ms. Phoenix's decision to engage in mental health care was somehow a response to a requirement by the City that she do so before they would dismiss the charges against her.  Short of prescience, it is *chronologically impossible* that Ms. Phoenix could have undertaken therapy in order to bring about the City's decision to dismiss.  Her therapy began on January 31, 2017 [SUF] but she was not even arraigned on the charges until February 7, 2017.  No prosecutor even appeared in the case until the first pre-trial on March 2, 2017 – more than one month after Ms. Phoenix started therapy.

The question is not whether the prosecution's characterization is more accurate than the Plaintiff's.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Prince v. Hosp. Hima San Pablo Caguas*, CIVIL No. 12-1221 (PG), at *9 (D.P.R. June 3, 2014) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000)).  Attempting to usurp the jury's role herself, here Defendant Cuellar presents facts contrary to the record as "undisputed," with no citation at all: "The undisputed fact here is that Plaintiff chose to engage in plea negotiations with the prosecutor to have her criminal

charges dismissed." D's Mem. Supt. Mot. Summ. J., Doc. 61-1 at 12.  Defendants have no proof, no evidence at all (nor could they) that any "plea negotiations" took place.

The free law dictionary of the Legal Information Institute at Cornell Law School defines plea bargains as "agreements between defendants and prosecutors in which defendants agree to plead guilty to some or all of the charges against them in exchange for concessions from the prosecutors." There is not a shred of evidence to suggest that Ms. Phoenix ever contemplated any plea other than Not Guilty, much less accepted one.   What the Defendant and those who accept this interpretation of "implied innocence" prescribe is that anyone who faces criminal charges in the absence of probable cause loses the presumption of innocence.  In order to defend their civil rights then, to make use of the statute designed to keep the Ku Klux Klan at bay, people charged with crimes must pro-actively establish their innocence, often at great emotional and financial cost.

"To require a person who is prosecuted without probable cause to prove her actual innocence is a perversion of the fundamental principle of the United States criminal justice system." *Thompson v. Clark*, 20-659, Brief of Civil Rights, Racial Justice, and Criminal Defense Organizations as Amici Curiae, January 4, 2021 at 5. (citing Jackson v. Virginia, 443 U.S. 307, 321-24 (1979)).  *Thompson* was argued before the Supreme Court October 12, 2021.  The decision will address, in the words of Plaintiff-Appellant,

> Whether the rule that a plaintiff must await favorable termination before bringing a Section 1983 action alleging unreasonable seizure pursuant to legal process requires the plaintiff to show that the criminal proceeding against him has 'formally ended in a manner not inconsistent with his innocence,' *Laskar v. Hurd*, 972 F.3d 1278, 1293 (11th Cir. 2020), or that the proceeding "ended in a manner that affirmatively indicates his innocence," *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).

*Petition for cert., filed,* at (i).  Plaintiff Thompson had been tackled to the ground by officers who forced their way into his home without a warrant in response to an erroneous report of child abuse

10

which the EMT's had already cleared.  *Id.* at 7-8.  He was criminally charged and resisted every

attempt by the prosecutor to plead to the charges, even refusing an Adjournment in Contemplation

of Dismissal ("ACD" - roughly New York State's equivalent of Rhode Island's Not Guilty Filing.) *Id.*

at 8-9.  Two days before Mr. Thompson's defense attorney was to file a motion to dismiss the case for

facial insufficiency, the prosecutor filed a dismissal "in the interest of justice." *Id.* at 9. The Second

Circuit determined that "a plaintiff asserting a Section 1983 claim for unreasonable seizure pursuant

to legal process must show "'affirmative indications of innocence to establish favorable termination.'"

*Id.* at 11 (quoting *Lanning*, 908 F.3d at 25).

Plaintiff Thompson found himself in much the same situation as Ms. Phoenix, where, in the

words of Defendant Clark, "a person who wants to bring a civil action under Section 1983 should

oppose dismissal of unfounded criminal charges and insist on a criminal trial." The respondent

acknowledged that "under [the affirmative indication of innocence] rule, a criminal defendant should

say, 'your Honor, we want to bring a civil suit ⋆ ⋆ ⋆ so don't dismiss it.'"[2] *Id.* at 10. Should the Court

adhere to this nullification of the presumption of innocence, it would require Plaintiffs in Ms.

Phoenix's position to make a similar request at pre-trials, and perhaps to make sure they do not engage

in any mental health care to address the harm done to them by defendants, or at least to make sure

tha if they do, the prosecutor does not find out about it.

## IV.   CONCLUSION

Here, assuming Plaintiff's version of the disputed facts and all reasonable inferences, a

reasonable jury could conclude that there was no probable cause that Ms. Phoenix had committed

---

[2] Under Rhode Island rules of criminal procedure for both misdemeanor and felony cases, only the prosecution can decide whether to dismiss a case.  *See* R.I. Super. R. Civ. P. 48(a) and R.I. Distr. R. Civ

any crime, based on the knowledge of the Defendants at the time, and that Defendant Cuellar's action

were the proximate cause that set off the chain of events leading to the prosecution of Ms. Phoenix.

For those reasons, Plaintiff prays that this Court DENY Defendant's Motion for Summary

Judgment.


Respectfully submitted,


Plaintiff, **SIMONE E. PHOENIX**
By her attorney,

Date:  February 17, 2022

/s/ Shannah Kurland

`
`

**Shannah Kurland, Esq**.  (#9186)
149 Lenox Avenue
Providence, RI 02907
Phone:  (401) 439-0518
skurland.esq@gmail.com


<u>CERTIFICATE OF SERVICE</u>


I hereby certify that I have caused this Response to be filed through the Court's CM/ECF system, where it is available for public viewing and shall be noticed to counsel for all defendants on this 17th day of February, 2022:


Kurt Rocha, Esq.                                  Paul S. Callaghan
*krocha@hcc-law.com*                       *pcallaghan@hcc-law.com*


Tyler J. Pare
*tpare@hacc-law.com*


/s/ Shannah Kurland
Shannah Kurland